# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOSE IGNACIO ANTUNEZ-PICHARDO,

Petitioner

v.

TODD BLANCHE, et al.,[1]

Respondents

Case No.: 2:26-cv-00275-APG-BNW

**Order Granting Petition for Writ of Habeas Corpus in Part**

[ECF No. 16]

Petitioner Jose Ignacio Antunez-Pichardo is a citizen of Cuba who is currently being detained by Immigration and Customs Enforcement (ICE). ECF No. 16 at 3. He entered the United States without inspection in May 2023. *Id.* at 4. Soon after he crossed the border, he was detained by U.S. Border Patrol and released on conditional parole[2] under 8 U.S.C. § 1226(a). *Id.*; ECF No. 17-2 at 2. At some point, he applied for asylum. *See* ECF No. 16 at 5-6.

In August 2025, Antunez-Pichardo was arrested in Las Vegas, Nevada for battery with a deadly weapon. *Id.* at 4. He was transferred to ICE custody. *Id.* at 5. He received a bond hearing before an Immigration Judge (IJ) in December 2025 where he talked about the circumstances of his battery charge. *Id.*; ECF No. 31 at 0:03:06-0:04:25. At that hearing, the government argued that the IJ did not have jurisdiction to release him and that, in the alternative, he should not be released because his arrest shows he is a danger to the community. ECF No. 31 at 0:06:27-

---

[1] Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem. Fed. R. Civ. P. 25(d).

[2] Antunez-Pichardo filed a notice of class membership of the certified class in *Jacobo-Ramriez v. Noem*, --- F. Supp. 3d ----, No. 2:25-cv-02136-RFB-MDC, 2026 WL 310090, at *24 (D. Nev. Feb. 5, 2026). The class definition in *Jacobo Ramirez* requires, among other things, that the noncitizen "entered the United States without inspection or parole." *Id.* Because Antunez-Pichardo was paroled, he is not a class member, so I decline to transfer his case.

0:06:44. At the hearing, the IJ ruled he did not have jurisdiction to grant bond pursuant to *Matter of Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and issued a written order that day to that effect. *Id.* at 0:06:46-0:07:07; ECF No. 30-1 at 2. The next month, he issued a bond memorandum further explaining his decision and finding in the alternative that he would deny bond because Antunez-Pichardo was a danger to the community due to his recent arrest. ECF No. 17-7 at 2-3. Antunez-Pichardo appealed the denial of bond to the Board of Immigration Appeals (BIA), and that appeal is pending. ECF No. 30 at 4.

At a later hearing, an IJ denied Antunez-Pichardo's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). ECF Nos. 16 at 5-6; 17-8 at 2. The IJ ordered him removed to Cuba or, in the alternative, to any third country willing to accept him. ECF No. 17-8 at 4. Antunez-Pichardo appealed the removal order to the BIA, and that appeal is also pending. ECF No. 16 at 6.

Antunez-Pichardo filed this petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking his release or a bond hearing where the government bears the burden to prove he must be detained by clear and convincing evidence. He raises three grounds for that relief. First, he argues that he cannot be subject to mandatory detention under 8 U.S.C. § 1225. Second, he contends the IJ's alternative finding of dangerousness was derived from an unconstitutional bond hearing and is not supported by the evidence. Finally, he argues his detention without a pre-deprivation custody determination violates his procedural and substantive due process rights.

Antunez-Pichardo also seeks to enjoin the government from removing him to a third country without an opportunity to present a fear-based claim for relief from removal before an IJ. He argues not doing so violates the Fifth Amendment and is arbitrary and capricious under the Administrative Procedure Act (APA).

The government opposes the petition.  It argues that that Antunez-Pichardo has not exhausted his administrative remedies, that he is properly detained under § 1225, that the IJ's alternative findings make his detention lawful under 8 U.S.C. § 1226(a), and that I may not reweigh the IJ's alternative bond determination.

I grant the petition in part, permanently enjoining respondents, including the BIA,[3] from justifying Antunez-Pichardo's detention under § 1225(b)(2)(A).  But I do not grant his release or a new bond hearing at this time.  Finally, I order the government to comply with due process before attempting to effectuate a third country removal.

## I.      DISCUSSION

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  I have "equitable discretion" "as law and justice require" for

---

[3] The BIA is housed within the Executive Office for Immigration Review overseen by respondent Todd Blanche. ECF No. 16 at 4.

remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 134 (2022) (quotation omitted).

**A. Antunez-Pichardo is detained under § 1226(a), not § 1225.**

The parties dispute whether § 1225 or § 1226(a) governs Antunez-Pichardo's detention and whether he must exhaust his administrative remedies for this claim.

The Ninth Circuit held that a noncitizen in removal proceedings must appeal an IJ's adverse bond determination to the BIA before seeking habeas review, "unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). This is a prudential requirement, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160. I "may waive the prudential exhaustion requirement" if the "pursuit of administrative remedies would be a futile gesture." *Hernandez*, 872 F.3d at 988 (quotation omitted).

Currently, Antunez-Pichardo's appeal of his bond denial to the BIA will be futile. The BIA adopted the interpretation that § 1225(b)(2)(A) mandates detention of noncitizens like Antunez-Pichardo in *Hurtado*, 29 I. & N. Dec. 216, 229. *Hurtado* "serve[s] as precedent[] in all proceedings involving the same issue" before the BIA, so the BIA would decide it lacks jurisdiction to release him. 8 C.F.R. § 1003.1(g)(2); *Pacham v. Archambeault*, No. 3:25-cv-03163-GPC-DEB, 2025 WL 3653984, at *3 n.2 (S.D. Cal. Dec. 17, 2025) (noting that *Hurtado* is a precedential decision of the BIA). "Where the [BIA's] position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." *Szonyi v.*

*Barr*, 942 F.3d 874, 891 (9th Cir. 2019) (quotation omitted). Therefore, I waive the prudential exhaustion requirement and will consider Antunez-Pichardo's claim that § 1226(a) governs his detention.

I have previously ruled that § 1226 governs the detention of noncitizens, like Antunez-Pichardo, who were detained within the country, years after entering, and not in the border context. *Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685, at *2-4 (D. Nev. Apr. 1, 2026). Therefore, Antunez-Pichardo is detained under § 1226(a). Accordingly, I enjoin the respondents, including the BIA and IJs, from justifying his detention under § 1225(b)(2)(A).

**B. At this time, Antunez-Pichardo's assertions of the unconstitutionality of his bond hearing do not entitle him to relief.**

Section 1226(a) and its implementing regulations entitle noncitizens to a bond hearing before an IJ. 8 C.F.R. § 236.1(d)(1). Antunez-Pichardo received one, where the IJ denied bond. He alleges several due process violations in this bond hearing, but none entitles him to relief.

*1. Antunez-Pichardo must exhaust his administrative remedies before challenging the IJ's finding of dangerousness in this court.*

First, Antunez-Pichardo argues that the IJ's finding that he is a danger to the community was not supported by the evidence. The government argues that he must exhaust the administrative remedies available to him.

The government is correct. *Leonardo* held that a noncitizen must appeal to and receive a decision from the BIA regarding an IJ's adverse finding of dangerousness before filing a habeas petition in a district court. 646 F.3d at 1159-60. Because this is a prudential exhaustion requirement, I may waive it if exhaustion is futile. *Hernandez*, 872 F.3d at 988. But exhaustion regarding the IJ's determination of Antunez-Pichardo's dangerousness is no longer futile because

I have enjoined the respondents, including the BIA, from justifying his detention under § 1225(b)(2)(A). This means that, on appeal, the BIA cannot rule that *Hurtado* mandates his detention. It instead must consider the merits of his bond request. Therefore, I deny this ground for relief.

> 2. *The IJ did not err by not considering Antunez-Pichardo's financial circumstances or alternatives to detention when denying him bond.*

Second, Antunez-Pichardo argues that due process requires the IJ to consider his financial circumstances and alternatives to detention that could mitigate his perceived dangerousness. The government argues that he must exhaust his administrative remedies and that the IJ followed the proper process to detain him under § 1226(a).

Antunez-Pichardo need not administratively exhaust this claim because doing so is futile. A precedential BIA decision, *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), holds that no single factor is mandatory for an IJ to consider in a bond hearing. *Hernandez*, 872 F.3d at 989. The BIA's position is that consideration of financial circumstances and alternatives to detention is not required, thus an appeal of this question to the BIA would be futile. *Id.* Additionally, whether due process requires consideration of these factors is a "purely legal question[]," which independently justifies waiving the prudential exhaustion requirement. *Id.*

The Ninth Circuit has indicated it is "likely" that an IJ must consider a noncitizen's financial circumstances and alternatives to detention when "setting monetary bonds" after the IJ determines the noncitizen is not a danger to the community, is not a flight risk, and is thereby bond eligible. *Hernandez*, 872 F.3d at 990-91, 994; *see also Matter of Siniauskas*, 27 I. & N. Dec. 207, 210 (BIA 2018) ("[A]n Immigration Judge should only set a monetary bond if the [detained noncitizen] first establishes that he is not a danger to the community."). Further, in

*Martinez v. Clark*, the Ninth Circuit held that the BIA did not have to consider alternative conditions of release on a noncitizen's appeal of his bond denial because the BIA already found him "to be a danger to the community." 124 F.4th 775, 786 (9th Cir. 2024).  Here, the IJ determined that Antunez-Pichardo was a danger to the community, so it was not improper for the IJ to not consider his financial circumstances or alternatives to release when denying him bond. I thus deny this ground for relief.

> 3.  *Antunez-Pichardo is not entitled to a bond hearing where the government bears the burden by clear and convincing evidence.*

Finally, Antunez-Pichardo argues that the IJ improperly placed the burden of proof on him rather than the government at his bond hearing.  Instead, he contends that due process mandates he receive a new bond hearing where the government bears the burden of proof by clear and convincing evidence.  The government refutes this.

A noncitizen detained under 8 U.S.C. § 1226(a) is entitled to an individualized bond hearing where he must prove "by a preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk'" for the IJ to order his release. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Guerra*, 24 I. & N. Dec. at 40).  In *Rodriguez Diaz*, the Ninth Circuit rejected a claim that it is "constitutionally inadequate" for a noncitizen to bear the burden of proof at his initial immigration bond hearing. 53 F.4th at 1210.  It instead held that "§ 1226(a)'s procedures satisfy due process, both facially and as applied" to the petitioner in that case. *Id.* at 1213.  But the Ninth Circuit did "not foreclose all as-applied challenges to § 1226(a)'s procedures." *Id.*  For example, it left open the question whether placing the burden on the noncitizen could create an unacceptably high risk of erroneous deprivation of the noncitizen's interest because the

noncitizen experiences language and cultural barriers, difficulty obtaining evidence, and financial inability to hire an attorney. *Id.* at 1211-12.

Antunez-Pichardo does not assert that he faced similar issues. The problems he alleges are that the IJ incorrectly determined his dangerousness and failed to consider his financial circumstances and alternatives to detention. As I explained above, neither claim entitles him to relief at this time. So due process does not require that Antunez-Pichardo receive a second bond hearing where the government bears the burden of proof.

### C. Antunez-Pichardo is not entitled to relief on his claim that he did not receive a pre-deprivation custody determination by an ICE officer.

Under § 1226(a)'s implementing regulations, an ICE officer makes the initial custody determination. 8 C.F.R. § 236.1(c)(8); *Rodriguez Diaz*, 53 F.4th at 1196. Antunez-Pichardo argues there is no evidence that an ICE officer conducted this initial custody determination, violating his procedural and substantive due process rights. The government does not dispute this.

Without deciding whether Antunez-Pichardo must administratively exhaust this claim or whether this is a constitutional violation, this claim's proper remedy in a habeas proceeding would be a bond hearing before an IJ. That already occurred. Due process does not require that he receive a second bond hearing at this time. *See Rodriguez Diaz*, 53 F.4th at 1193-94. Therefore, I deny this ground for relief.

/ / / /

/ / / /

/ / / /

/ / / /

8

**D. Under the Fifth Amendment, I grant Antunez-Pichardo the opportunity to seek fear-based protection before his removal to a third country.**

Antunez-Pichardo argues that the Fifth Amendment and the APA entitle him to meaningful notice and an opportunity to present a fear-based claim to an IJ before his deportation to a third country. The government does not respond to this claim.

Removal to a country that is not identified by the immigration judge during the removal proceedings is referred to as a third country removal. Although DHS has authority to effectuate third country removals, a noncitizen may not be removed to a country where his or her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion" (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as CAT). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.

I have already held that the government must comply with the due process requirements of notice and a reasonable opportunity to be heard before a third country removal can be effectuated, and I do so again here.[4] *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *4-5 (D. Nev. Apr. 22, 2026) (citing cases holding the same). Before removal to a third country, Antunez-Pichardo must receive "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019). Additionally, he must be asked whether he fears persecution or harm upon removal to the third country, and his

---

[4] Because I agree with Antunez-Pichardo's due process argument, I do not address his argument under the APA.

9

response must be memorialized in a writing signed by him. *Id*. "If the noncitizen expresses a fear of persecution or harm, DHS must inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts." *Id*. Finally, the government must give him "adequate time to prepare and file a motion to reopen in order to challenge DHS's country designation and/or apply for asylum, withholding, and relief under the CAT" before an IJ. *Id*. at 1020; *see also A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) (concluding the petitioner was likely to succeed on the merits because "due process requires Petitioner be provided an opportunity to have his fear-based claims for removal to [a third country] considered by an immigration judge").

## II.    CONCLUSION

I THEREFORE ORDER that petitioner Jose Ignacio Antunez-Pichardo's petition for writ of habeas corpus **(ECF No. 16) is GRANTED in part**.

I FURTHER ORDER that the respondents are PERMANENTLY ENJOINED from denying Rodriguez the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

I FURTHER ORDER that the respondents are prohibited from removing Antunez-Pichardo to any other third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of providing him a reasonable opportunity to reopen immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

/ / / /

/ / / /

/ / / /

10

I FURTHER ORDER the clerk of court to close this case.

DATED this 13th day of May, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

11