**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JOSE IGNACIO ANTUNEZ-PICHARDO,

Petitioner,

v.

TODD BLANCHE,[1] *et al.*,

Respondents.

Case No. 2:26-cv-00275-RFB-BNW

**ORDER GRANTING MOTION FOR RECONSIDERATION IN PART**

Before the Court is Petitioner Jose Ignacio Antunez-Pichardo's Motion to Reconsider the Court's May 13, 2026, Order (ECF No. 32). See Mot. to Reconsider the Court's, Order Granting Pet. for Writ of Habeas Corpus in Part, ECF No. 37 (June 10, 2026) [hereinafter, "Motion"]. For the following reasons, the Court grants the Motion in part; vacates the Court's (1) finding that he is not a member of the certified class in Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC (D. Nev.), and its resulting (2) decisions denying him relief of immediate release on Grounds 1B and 1C of the First Amended Petition, and grants him immediate release. See First Am. Pet. for Writ of Habeas Corpus, ECF No. 16 (March 17, 2026) [hereinafter, "Am. Pet."].

## I. INTRODUCTION AND BACKGROUND

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). See generally Am. Pet. Federal Respondents (also referred to herein as "the government") are detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") that

[1] At the conclusion of this Order, the Court will direct the Clerk of Court to substitute Todd Blanche for Respondent Pamela Bondi, David J. Venturella for Respondent Todd Lyons, and Markwayne Mullin for Respondent Kristi Noem under Federal Rule of Civil Procedure 25(d).

generally[2] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Fed. Resp'ts' Resp. to First Am. Pet., ECF No. 21 (Apr. 2, 2026) [hereinafter, "Return"].

Petitioner asserts he is a member of the certified class action pending before this Court in Jacobo-Ramirez v. Mullin ("Class Member"). See Notice of Class Membership, ECF No. 27 (Apr. 15, 2026) [hereinafter "Notice"]; see also Jacobo-Ramirez v. Noem, 823 F. Supp. 3d 1182 (D. Nev. 2026) (certifying class of undocumented noncitizens who are or will be subject to mandatory detention within the District of Nevada under the Executive Branch's reinterpretation of § 1225(b)(2)(A)). Petitioner seeks enforcement of his rights as a Class Member, as adjudicated by this Court on March 30, 2026. See Jacobo-Ramirez v. Mullin, 834 F. Supp. 3d 1073 (D. Nev. 2026) (granting partial summary judgment in favor of Class Members on their statutory and regulatory claims).

Through the Jacobo-Ramirez judgment, the Court declared that Class Members "are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations 8 C.F.R. §§ 236.1, 1236.1 & 1003.19" and "not subject to detention under 8 U.S.C. § 1225(b)(2)(A)." Id. at 1123. The Court further set aside (*i.e.*, vacated) the detention policies of the U.S. Department of Homeland Security ("DHS") and the U.S. Department of Justice ("DOJ") that arose from the government's novel interpretation of § 1225(b)(2)(A), after finding them unlawful under the INA and its implementing regulations, pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). See id. Those policies were captured in an internal memorandum issued to U.S. Immigration and Customs ("ICE") on July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" (a.k.a., "the July 8th Memo") and the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I& N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See id. at *8–9 (discussing the July 8th Memo, which set forth the "formal nationwide policy of DHS and DOJ," and Hurtado, which formally adopted the July 8th Memo policy within the Executive Office for Immigration Review ("EOIR") and legally binds all

---

[2] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez, 834 F. Supp. 3d at 1093 (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

immigration courts). The Ninth Circuit has also found Respondents' statutory interpretation of 8 U.S.C. § 1225 to be erroneous. See Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026) (concluding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)").

Petitioner seeks release from detention because, he asserts, Federal Respondents have refused to comply with § 1226(a), its implementing regulations, and the Jacobo-Ramirez declaratory judgment and vacatur. See Am. Pet. at 6–8; see generally Pet'r's Traverse, ECF No. 30 (Apr. 24, 2026) [hereinafter, "Traverse"]. Petitioner also asserts his arrest and detention without required procedures violates the Due Process Clause of the Fifth Amendment. See Am. Pet. at 8–10. He further asserts the Immigration Judge ("IJ") failed to provide meaningful due process when it placed the burden on him, rather than the government, during his December 15, 2025, bond hearing, and the IJ's finding of dangerousness was not supported by the evidence. Am. Pet. at 10–11. Lastly, he asserts the IJ's order of removal to "ANY THIRD COUNTRY THAT WILL ACCEPT HIM" violates the Due Process Clause of the Fifth Amendment and the APA. Id. at 11–13. In response, the government does not dispute that Petitioner is a Class Member. See Return at 3–4. Specifically, the government fully incorporated its "legal arguments previously presented in Baca Beltrand v. Mattos, [No. 2:25-CV-01430-CDS-EJY], and Jacobo Ramirez v. Noem" regarding § 1225(b)(2)(A) but also argued Petitioner's continued detention is lawful under § 1226(a) because he received an individualized bond determination in a hearing that complied with due process requirements. See id. at 4–7.

The Court granted the Amended Petition in part, concluding Petitioner is detained under § 1226(a), not § 1225, and entitled to the opportunity to seek fear-based protection before he is removed to a third country. See Order Granting Pet. for Writ of Habeas Corpus in Part, at 4–5 & 9–10, ECF No. 32 (May 13, 2026) [hereinafter, "Order Granting Writ in Part"]. The Court also concluded that Petitioner is not a Class Member because he had been released on conditional parole under 8 U.S.C. § 1226(a). Id. at 1 n.2. It denied all grounds challenging Petitioner's current detention and December 2025 bond hearing and closed this case. Id. at 5–8, 11.

Petitioner then filed a *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241

in the action styled Antunez-Pichardo v. Bondi, No. 2:26-CV-01525-RFB-EJY (referred to herein as hereinafter, "Antunez-Pichardo II"). The Federal Public Defender ("FPD") was appointed to represent him in that case. Id. at ECF 3. Federal Respondents filed a Response to the *pro se* Petition with supporting exhibits. Id. at ECF No. 5. The FPD filed a First Amended Petition with supporting exhibits. Id. at ECF Nos. 8, 9. Antunez-Pichardo II was consolidated with this case, and this case was reopened and transferred to the undersigned for all further proceedings. Id. at ECF No. 10. The First Amended Petition and supporting exhibits from Antunez-Pichardo II were filed in this case and stayed pending resolution of Petitioner's anticipated motion for reconsideration. See Minute Order in Chambers, ECF No. 34 (June 1, 2026); see also (Second) First Amended Petition, ECF No. 35 [hereinafter, "First Am. Pet."]; Exhibits to First Am. Pet., ECF No. 36 (June 5, 2026).

Petitioner filed his motion for reconsideration under District of Nevada Local Rule 59-1 on the 28th day after the Court granted the writ in part and closed this case. Compare Order Granting Writ in Part (filed on May 13, 2026), with Motion (filed on June 10, 2026). In ordering expedited briefing on the Motion, this Court directed Federal Respondents to explain their failure to produce the "original order denying bond" during discovery, and to confirm the current status of Petitioner's custody redetermination appeal before the BIA with a sworn declaration or authenticated documents considering Petitioner's statement that ICE said there was no record of any appeal. See Minute Order, ECF No. 38 (June 11, 2026); see also Minute Order, ECF No. 40 (June 17, 2026). The government responded that it does not know why it produced the bond memorandum but not the bond order. Fed. Resp'ts' Resp. to Mot. for Reconsideration at 4, ECF No. 39 (June 16, 2026) [hereinafter, "Response"]. Respondents provided an unauthenticated filing receipt for Petitioner's appeal that did not reflect the proceeding's current status. See Response, Ex. A, ECF No. 39-1. And Respondents failed to file a supplement with that information despite this Court's order to do so. See Minute Order, ECF No. 40.

As discussed below, the Court grants Petitioner's motion for reconsideration in part, vacates the parts of the Order Granting Writ in Part that found Petitioner is not a Jacobo-Ramirez Class Member (footnote 2) and denied him immediate release on Grounds 1B and 1C in the Amended Petition because the Court's factual error about class membership made those decisions

manifestly unjust. The Court finds that Petitioner is a Class Member. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) are unlawful under the INA and violate this Court's declaratory judgment and vacatur. Further, the Court finds Petitioner's arrest and ongoing detention without the *pre-deprivation* process required under § 1226(a) violates his constitutional right to due process. Finally, the Court finds the appropriate remedy for Petitioner's unlawful detention and the government's defiance of the Jacobo-Ramirez judgment is immediate release from custody, a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A), and an order requiring Federal Respondents to follow appropriate procedures in the event they seek to re-detain Petitioner under § 1226(a).

## II. LEGAL STANDARD FOR RECONSIDERATION

"Motions seeking reconsideration of case-dispositive orders are governed by [Federal Rule of Civil Procedure], 59 or 60, as applicable." Local Rule 59-1(a). Both rules apply in habeas proceedings. See Browder v. Director, Dept. of Corr. of Ill., 434 U.S. 257, 270 (1978) (holding that Rules 52(b) and 59, including their strict time limits, apply in habeas proceedings); see also Gonzalez v. Crosby, 545 U.S. 524, 538 (2005) (holding "that a Rule 60(b)(6) motion in a § 2254 case is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction"). Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The Ninth Circuit has recognized four non-exhaustive grounds for granting relief under Rule 59(e):

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).

## III. DISCUSSION

Petitioner timely filed his motion for reconsideration under LR 59-1 and FRCP 59(e). His motion raises proper grounds for reconsideration. Specifically, Petitioner argues that reconsideration is merited because of the Court's decisions that (1) he is not a Jacobo-Ramirez Class Member and (2) is required to exhaust his administrative remedies are based on legal and factual errors. See generally Motion. The government does not address Petitioner's specific points but, rather, generally argues there is no newly discovered evidence that would alter the Court's initial decision, and the decision was not the product of clear error or manifestly unjust. See generally Response. The government's unsupported conclusion that reconsideration is not merited constitutes consent to the granting of the Motion. See Local Rule 7-2(d). Petitioner is also entitled to relief in part on the Motion's merits.

**A. Class Membership**

The certified Jacobo-Ramirez class is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Ramirez v. Noem, 823 F. Supp. 3d 1182, 1223–24 (D. Nev. 2026).

In granting the writ in part, the Court stated that Petitioner "entered the United States without inspection in May 2023" and was later "detained by U.S. Border Patrol and released on conditional parole under 8 U.S.C. § 1226(a)." Order Granting Writ in Part at 1 (citation modified). The Court explained that "[t]he class definition in Jacobo Ramirez requires, among other things, that the noncitizen "entered the United States without inspection or parole." Id. at 1 n.2 (quoting Jacobo-Ramirez v. Noem, 823 F. Supp. 3d 1182, 1123 (D. Nev. 2026)). It then found that "[b]ecause [Petitioner] was paroled, he is not a class member," and it thus declined to transfer his case to the class action. Id.

The Ninth Circuit explained in Ortega-Cervantes v. Gonzales that "[t]wo provisions of the

immigration laws authorize the parole of [noncitizens]" but "[o]nly one of those provisions, 8 U.S.C. § 1182(d)(5)(A), specifically refers to 'parole into the United States . . . .'" 501 F.3d 1111, 1114 (9th Cir. 2007). "The second parole provision, 8 U.S.C. § 1226(a), provides for the 'conditional parole' of [noncitizens] who are detained pending a final removal decision . . . ." Id. The third element of the class definition invokes the former meaning of parole, including as Class Members only those noncitizens "whom DHS alleges or will allege to have entered the United States without inspection or parole[.]" Jacobo Ramirez, 823 F. Supp. 3d at 1123. The record demonstrates that Petitioner satisfies this and all other elements of the class definition.

The government charged Petitioner with being "a[ ] [noncitizen]present in the United States who has not been admitted or paroled." Index of Exhibits in Support of First Amended Petition [hereafter, "Index"], Ex. A at 2, ECF No. 17-1 [hereinafter, "Notice to Appear"]. Specifically, the government contends that Petitioner was "apprehended" by U.S. Border Patrol "soon after unlawful entry" into "the United States at or near Brownsville, [Texas], on or about May 9, 2023[,]" and he was "not then admitted or paroled after inspection by an Immigration Officer." Compare id. (emphasis omitted), with id., Exhibit 3 at 3, ECF No. 17-3 [hereinafter, "I-213"]. Rather, Petitioner "entered the USA without inspection." Id., Exhibit 7 at 2, ECF No. 17-7. And he "never applied for any type of status in the USA" at the border. Id.

His most recent arrest happened in Las Vegas, Nevada, in August 2025. I-213 at 3. According to DHS's documents, Petitioner's "current administrative charges" are that he is a "[noncitizen] present without admission or parole" under INA 212(a)(6)(A)(i). Id. In denying Petitioner's motion to terminate his removal proceedings, the IJ found that he "was not admitted or paroled." Index, Ex. B at 2, ECF No. 17-2. Rather, he was "released on conditional parole under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1226(a)(2)(B)." Id. "DHS did not release him under the terms required to invoke the humanitarian parole authority under section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A)." Id. Thus, Petitioner "ha[s] not been 'inspected and admitted or paroled'" into the United States. Id. Or, as the government said in its Return, "Respondents' position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) because Petitioner was present in the United States without being admitted or paroled." Return at 3 (citation

modified). According to EOIR, Petitioner was ordered removed on January 14, 2026, his appeal was received on February 9, 2026, and is currently pending but the briefing schedule expired without Petitioner or DHS filing any briefs.

The Court's finding that Petitioner is not a Class Member was clearly erroneous. DHS contends—and the government concedes—that Petitioner was not inspected, admitted, or paroled into the United States. In reaching the opposite conclusion, the Court conflated two ways that a noncitizen may be paroled in the immigration context and erroneously concluded that because Petitioner was conditionally paroled under § 1226(a) he falls outside the class definition. The Court thus vacates the part of the Order Granting Writ in Part that found Petitioner is not a Jacobo-Ramirez class member (footnote 2).

Petitioner is clearly a Jacobo-Ramirez Class Member entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court. The declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

Federal Respondents offer no explanation for their reliance on § 1225(b)(2)(A) to detain noncitizens like Petitioner in violation of this Court's binding judgment. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*.") (citation modified); id. ("This form of relief conclusively resolves the legal rights of the parties.") (citation modified). Thus, Petitioner was forced to seek enforcement of the Jacobo-Ramirez judgment through this habeas proceeding, and the Court must reiterate its finding that his

ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 834 F. Supp. 3d at 1123.

**B. Due Process**

The Court's erroneous finding that Petitioner is not a Class Member affected its resolution of Grounds 1B and 1C in the Amended Petition, which respectively challenge detention on due process grounds and the bond hearing on due process and evidentiary grounds. Am Pet. at 8–11. In denying relief on Ground 1B, the Court held that, regardless of whether Petitioner was required to administratively exhaust his due process challenge based on the lack of a pre-deprivation custody determination by an ICE officer, appropriate relief would be a bond hearing before an IJ, which already happened. Id. at 8. In denying relief on Ground 1C, the Court held that Petitioner must exhaust his administrative remedies by appealing the IJ's dangerousness finding to the BIA. Order Granting Writ in Part at 5–6. It also held that exhaustion is not futile because it permanently enjoined the government, including the BIA, from justifying Petitioner's detention under § 1225(b)(2)(A) and Hurtado. Id. In denying relief on Ground 1C, the Court held that due process does not require a bond hearing where the burden of proof is shifted to the government to show by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. Id. at 7–8.

These determinations are manifestly unjust because they denied Petitioner the benefit of the Court's declaratory judgment and vacatur in Jacobo-Ramirez, and the relief the Court afforded Petitioner significantly diverges from that judgment. In granting the Class's motion for summary judgment on their statutory claims, the Court defined the scope of relief as follows:

> [T]he Court issues a classwide declaratory judgment that Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.

Jacobo-Ramirez v. Mullin, 834 F. Supp. 3d at 1121. The Court vacated and set aside Hurtado and the July 8th Memo. Id. at 1093, 1120. It declared those agency actions were unlawful, and it

returned the process to the *status quo* that existed before they were implemented. Id. at 1120.

To be sure, Petitioner sought more than a bond hearing like the one he received on December 15. The remedies he asked for are "immediate release," or in the alternative, a conditional writ requiring a "constitutionally adequate"[3] bond hearing with the evidentiary burden shifted to the government to justify his continued detention. Am. Pet. at 2, 13. He also sought *full* enforcement of the Jacobo-Ramirez judgment, see generally Notice of Class Membership, ECF No. 27, which did not merely require that Class Members receive bond hearings before an IJ, but rather, requires *full compliance* with § 1226(a) and its implementing regulations. Jacobo-Ramirez, 2026 WL 879799, at *31 ("Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole *after an initial custody determination*, Class Members are entitled to custody *redetermination(s)* before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.") (emphasis added).

It cannot honestly be disputed that Federal Respondents have not complied with 8 C.F.R. § 236.1, because they arrested Petitioner without a properly executed and served I-200 Warrant of Arrest and have not conducted an initial custody determination for Petitioner. See, e.g., Order Granting Writ in Part at 8 (confirming "[t]he government does not dispute" "there is no evidence that an ICE officer conducted" an initial custody determination"); see Motion at 4 & n.7 (no initial custody determination) and 5 (no warrant); see generally Response (no reference to or exhibit of an I-200 Administrative Warrant or Form I-286 Initial Custody Determination as to this Petitioner); see generally Return (same); accord Antunez-Pichardo II, Fed. Resp'ts' Resp. to Petitioner's Verified Pet. for Habeas Corpus, Ex. A at 5, ECF No. 5-1 (producing an unsigned and unserved I-200 for Petitioner). Thus, Petitioner was entitled to immediate release to remedy Federal Respondents' violation of the Jacobo-Ramirez judgment and Petitioner's due process rights.

---

[3] Petitioner specifically asserted that his December 15 bond hearing was constitutionally deficient because the IJ placed the evidentiary burden on him to disprove dangerousness, and then abused its discretion denying bond based on an arrest for battery with a deadly weapon with insufficient evidence and without considering all the factors outlined in Matter of Guerra, 24 I& N Dec. 37 (BIA 2006). Am. Pet. at 10–11.

Class Members and similarly situated noncitizens are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Noem, 817 F. Supp. 3d 1037, 1053–54 (D. Nev. 2025). The Due Process Clause of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citation modified) (citations include Wong Yang Sung v. McGrath, 339 U.S. 33, 48–51 (1950)); see also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Consequently, as well over a century of Supreme Court precedent establishes, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903); see also United States v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of precedent admits of no exception: a[ ] [noncitizen] who has entered the United States is guaranteed due process protections."). That is especially the case where a noncitizen's physical liberty is at stake, because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690.

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia,* the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the

basis for their detention through a notice to appear, both of which must be signed and served by designated immigration officers; the requirement that an ICE officer with designated authority conduct an initial custody determination at the outset of detention, wherein the noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding" such that they can be released on bond and/or supervisory conditions, rather than detained, while their removability is adjudicated; and the right to appeal an ICE officer's initial custody determination through a prompt hearing before an IJ based on individualized evidence, wherein the IJ will order release on bond and/or conditions if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at *6–7 (citing 8 C.F.R. §§ 236.1(c)(8); 236.1(d)(1); 287.5(d); 287.8(c)(2)(i)-(ii); 1003.19; and quoting Rodriguez Diaz, 53 F.4th at 1196) (citation modified).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690). As a result, noncitizens like Petitioner are indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without pre-deprivation procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving the detainee of their liberty.

Indeed, DHS and the DOJ's § 1225(b)(2)(A) detention policy, as articulated in the July 8th Memo, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioner, because individual custody determinations are only required under § 1226 by regulation. See Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8th Memo; citing 8 C.F.R. § 236.1(c)(8)). Despite the Court's vacatur of that policy as to Class Members on March 30th, see id. at *33, as Petitioner's circumstances illustrate, the government is still detaining Class Members without any pre-deprivation consideration, notice, or

opportunity to be heard regarding whether detention is justified.[4] And the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine a[ ] noncitizen's status without running the risk of the [noncitizen]'s either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to mandate the detention of millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," Jacobo-Ramirez, 2026 WL 879799, at *2, raises serious constitutional concerns. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha, 175 F.4th at 94–96 (finding the government's interpretation raised due process concerns including that it "would likely subject" noncitizens "to unconstitutionally prolonged detention," "compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held."). Many of these constitutional concerns are Petitioner's current reality.

As such, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. The procedural protections required under § 1226(a) encompass indispensable *pre-deprivation* notice and an opportunity to be heard regarding the individualized basis for ICE's decision to detain a noncitizen, which is "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210. Petitioner's

---

[4] Federal Respondents have recently confirmed that they are not conducting initial custody determinations or issuing Form I-286 notices of such determinations to any Class Members.

arrest and detention without those pre-deprivation protections violates his right to procedural due process.

To determine what process is due under the Constitution, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–07 (collecting cases and finding the Mathews test appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation modified).

On balance, these factors weigh heavily in favor of Petitioner. First, the private interest affected is Petitioner's paramount interest in his physical liberty. See Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (freedom from imprisonment is "the most elemental of liberty interests") (citation omitted); United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). That interest is especially weighty considering the lack of process he has received, and that was available to him, upon his arrest and at the outset of his detention. See Rodriguez Diaz, 53 F.4th at 1208 (considering the process the immigration detainee had already received prior to and during his detention under § 1226(a), and the further process that was available to him, in weighing his private liberty interest). Unlike the detainee in Rodriguez Diaz who was afforded the full breadth of procedural protections under § 1226(a), Petitioner was afforded no *pre-deprivation* process regarding ICE's determination that he must be detained pending a final adjudication of his alleged removability.

Importantly, where physical liberty is at stake, the *pre-deprivation* process provided through the warrant and initial custody determination requirements under § 1226(a) is essential. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity

for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)); The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972) (where liberty is "implicated, the right to some kind of prior hearing is paramount."). Generally, a lack of pre-deprivation due process is only permissible in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379 (1971). Even so, a "full hearing must be available promptly after the temporary deprivation occurs." Barry v. Barchi, 443 U.S. 55, 72 (1979) (Brennan, J., concurring in part). The government has identified no extraordinary circumstances that would justify the lack of pre-deprivation process here. Thus, the fact that Petitioner was provided with a post-deprivation bond hearing before an IJ after nearly four months of arbitrary detention, does not diminish Petitioner's liberty interest in meaningful pre-deprivation process.

Second, the risk of an erroneous deprivation of liberty is intolerably high under the government's current procedures, which do not require any pre-deprivation initial custody determination—let alone notice or hearing regarding that determination—that Petitioner's detention serves its constitutionally recognized regulatory goals. See Mathews, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'") (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). A "relatively immutable" principle of due process is that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Greene v. McElroy, 360 U.S. 474, 496 (1959).

The initial custody determination requirement under § 1226(a) not only ensures that the government has a factual basis for determining that the noncitizen's pre-adjudicative civil detention is necessary due to their dangerousness or flight risk; it also requires the *disclosure* of that factual basis to the detainee. Accordingly, when a detainee seeks to *appeal* the government's decision to detain them through a custody *redetermination* hearing (*i.e.* bond hearing) before an IJ, they have already been provided advanced notice of the evidence underlying the government's

determination, such that the hearing presents an opportunity to disprove and rebut that evidence. See 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added); see also Mathews, 4224 U.S. at 345–46 (noting the importance of "full access to all information relied upon by the state agency. . . . Opportunity is then afforded the recipient to submit additional evidence or arguments, enabling him to challenge directly the accuracy of information in his file as well as the correctness of the agency's tentative conclusions."). Under the government's current procedures, however, because Petitioner was not afforded an initial custody determination, the subsequent bond hearing before the IJ required him to *guess* the basis for ICE's determination that he is dangerous or a flight risk and then disprove it, at a hearing wherein there is a presumption of detention, which the detainee bears the evidentiary burden of overcoming. See In re Guerra, 24 I& N Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ). In the absence of an initial custody determination, then, this post-deprivation hearing creates an excessive risk of erroneous deprivation and lacks fundamental fairness. Cf. Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (finding a detainee should not be "burdened by the impossible task of imagining and refuting causes which may have had a bearing" upon the immigration official's decision to detain him).

Nor is Petitioner provided with pre-deprivation notice and a timely opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA that apply to noncitizens who are arrested within the interior of the country (like Petitioner) and not while arriving[5] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where

[5] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." Jacobo-Ramirez, 834 F. Supp. 3d at 1093 (quoting the July 8th Memo).

"the detainee may avoid mandatory detention by demonstrating that he is not a[ ] [noncitizen], was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002)); Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures, which the government has only recently abandoned after thirty years of consistent prior practice, require an administrative warrant, a pre-deprivation hearing and determination by ICE that detention is justified based on Petitioner's individual circumstances, written notice of that determination, and a prompt opportunity to appeal that determination, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 834 F. Supp. 3d at 1118–1123; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures significantly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who pose a danger to their community or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed a danger to the community or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 834 F. Supp. 3d at 1119 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation modified). Similarly, the public interest is served by the procedures under § 1226(a), which limit the "substantial societal costs" that "unnecessary detention imposes" by separating "families" and removing "from the community breadwinners, caregivers, parents, siblings[,] and employees." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021).

## IV. REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to prolonged—over a year of—arbitrary detention in violation of his statutory and constitutional

rights, as well as the Jacobo-Ramirez judgment. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (citation modified). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

Federal Respondents have not produced a Form I-286 Initial Custody Determination or a signed and served Form I-200 Administrative Warrant as to Petitioner. The Court finds the government's failure to produce evidence of a lawfully executed and served administrative warrant or individualized pre-deprivation custody determination with their Return is a concession that no such records exist as to Petitioner, and he was not afforded procedures required by the INA. See Jacobo-Ramirez, 834 F. Supp. 3d at 1120 ("Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

On that basis, the Court finds Petitioner's detention "was unlawful from its inception because ICE detained [him] under the wrong statute and without affording [him] any notice or process whatsoever, much less the procedures due under Section 1226(a)." Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) (ordering a noncitizen's release on this basis and finding a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"); see also Djiwaje v. Bondi, No. 2:26-CV-00344-RFB-MDC, 2026 WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (finding "the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]'s compliance with governing regulations[,]" and in the absence of a showing that the warrantless arrest exception under 8 U.S.C. § 1357(a)(2) applied at the time of the noncitizen's arrest, the petitioner's seizure was unlawful such that release was the appropriate

remedy) (citation modified). In the absence of a warrant and an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified). Immediate release is thus the appropriate remedy for Federal Respondents' detain-first-justify-later approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and due process.

The Court further finds immediate release is the appropriate remedy for Federal Respondents' ongoing defiance of the Jacobo-Ramirez judgment. The Court issued its declaratory judgment and vacated ICE's internal policy of not issuing initial custody determinations to Class Members and Hurtado on March 30, 2026. See Jacobo-Ramirez, 834 F. Supp. 3d at 1123. Petitioner did not receive an initial custody determination; rather ICE applied its now-vacated policy to him and detained him without consideration of his dangerousness or flight risk. This means that in addition to being unlawful from its inception under the INA, Petitioner's detention was also in direct defiance of his adjudicated rights as a Class Member as of March 30, 2026. Over four months have passed since the Jacobo-Ramirez judgment, yet, to date, ICE has not conducted an initial custody determination for Petitioner. Put simply, four months after a binding judgment that (1) declared Petitioner's detention illegal and (2) vacated the agency policy underlying his arrest and detention, the government has taken no action to cure its unlawful conduct.

The Form I-286 Notice is especially significant because it is served on the detainee at the outset of detention and provides the formal mechanism—a box the detainee may check—to immediately request a custody *redetermination* hearing (*i.e.*, bond hearing) before and IJ. Importantly, then, by refusing to issue I-286 Notices, Federal Respondents are depriving Class Members like Petitioner of the ability to immediately and efficiently request a bond hearing in immigration court. As Federal Respondents have explained, the only process currently available for a detained Class Member to request a bond hearing is by mailing a written request to EOIR from their detention center. Class Members receive no instructions regarding how to do so. But if ICE had conducted an initial custody determination and served the Form I-286 Notice upon

Petitioner's arrest consistent with 8 C.F.R. § 236.1, he could have immediately requested a bond *redetermination* hearing by simply checking a box.

Moreover, as the Court already explained, a custody *redetermination* hearing before an IJ without an *initial* custody determination by ICE, flouts the regulatory scheme, which delegates authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer. 8 C.F.R. § 236.1(d) (emphasis added). Accordingly, because ICE continues to enforce its vacated policy, any post-deprivation bond hearing before an IJ does not comply with § 1226(a)'s regulations, or, by extension, the Jacobo-Ramirez judgment.

The only justification Federal Respondents have provided for their noncompliance with the Jacobo-Ramirez judgment is that it "has no coercive effect." Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 45:5–51:10, June 15, 2026, ECF No. 167. Note, Federal Respondents do not assert that their continued enforcement of a policy that has been vacated under the APA, and disregard for Petitioner's adjudicated rights as a Class Member, is legally defensible. Instead, they are unabashedly exploiting the fact that, absent coercive classwide relief, the Court cannot ensure their compliance on a classwide basis through its contempt power. Consequently, in this, and countless other habeas matters filed by Jacobo-Ramirez Class Members, the government, which has yet to file an appeal in Jacobo-Ramirez, is disturbing the longstanding assumption that Executive Branch officials and departments will comply with a declaratory judgment unless and until it is stayed or vacated. See United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). More fundamentally, the government is rebelling against the basic principle underlying our constitutional system that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947).

Despite Federal Respondents' open defiance, it is true that the declaratory judgment establishes Petitioner's rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt."). Similarly, this

Court's vacatur under the APA "does not affect the Government's future actions" and "neither compels nor restrains further agency decision-making." Nat'l TPS All. v. Noem, 166 F.4th 739, 760 (9th Cir. 2026) (citation modified). In the absence of the threat of contempt, Federal Respondents have made clear that they will not conform their conduct to the Jacobo-Ramirez judgment voluntarily. The consequence is not that the lawfulness of Petitioner's detention is uncertain—this Court has already adjudicated it—but that Petitioner requires an appropriate remedy in this habeas proceeding, backed by the Court's contempt power, to give effect to his clearly established rights as a Class Member.

Finally, in fashioning the appropriate remedy, the Court considers the fact that Federal Respondents' disregard for its orders is not unique to the Jacobo-Ramirez judgment. Rather, Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters, apparently undeterred by the fact that, in contrast to the non-coercive nature of the declaratory judgment, those orders *are* backed by the Court's contempt power. These violations include, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners as ordered, disregarding deadlines, failing to provide constitutionally adequate bond hearings, and imposing unlawful release conditions. See Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[6] "By violating this Court's orders, Respondents are undermining their

[6] Since the Jimenez Gomez decision, this Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Sira v. Bondi, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); Cortez Diaz v. Blanche, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); Yanes-Quijada v. Mattos, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026) (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); Garcia Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking fundamentally inconsistent positions in federal habeas proceedings and immigration court); Cruz Perez v. Bondi, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); Malta De Sa v. Mullin, No. 2:26-CV-00594-RFB-MDC, ECF No. 25 (D. Nev. May 19, 2026) (finding DHS and ICE unilaterally imposed burdensome release conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with the Court's conditional writ requiring a constitutionally adequate bond hearing and enforcing the Writ by ordering the petitioner's release); Bibiano v. Blanche, 2:26-CV-

credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners" and squanders this Court's finite resources. See id.

For all these reasons, the Court will not ratify the government's lawless conduct by considering Petitioner's arguments challenging the IJ's purported dangerousness finding or ordering another bond hearing for Petitioner. While ordering a bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances the Court declines to prolong Petitioner's unlawful detention any further. Ordering further briefing or another bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications" and would inadequately remedy the harms Petitioner has suffered. Zheng v. Rokosky, 826 F. Supp. 3d 545, 563 (D.N.J. 2026); see also, e.g., E.A. T.B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (citation omitted). Moreover, ordering a bond hearing would provide Federal Respondents with yet another opportunity to violate this Court's Orders and due process.[7]

---

00927-RFB-BNW, ECF No. 19 (D. Nev. May 21, 2026) (despite ICE being given 24 hours to release Petitioner, they failed to provide advanced notice of the petitioner's release, and the petitioner could not be located by his counsel); Changyi v. Leyva, 2:26-CV-01280-RFB-MDC, ECF No. 21 (D. Nev. June 6, 2026) (petitioner was held in detention for an additional three days, despite having been granted bond and ordered immediately released by the immigration judge). This list is far from exhaustive.

[7] In related habeas matters where the Court has issued a conditional writ, providing Federal Respondents an opportunity to cure the petitioner's unlawful detention through a constitutionally adequate bond hearing, DHS and the immigration courts have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (enforcing conditional writ after Federal Respondents asserted 8 U.S.C. § 1226(c) did not apply to Petitioner in response to his habeas petition, and then the immigration court denied Petitioner release on bond under § 1226(c) after a Court-ordered bond hearing); Cruz Perez v. Blanche, No. 2:26-CV-00315-RFB-DJA, Order Enforcing Writ, ECF No. 31 (D. Nev. May 15, 2026) (finding both DHS and the IJ openly defied the Court's requirement that the evidentiary burden be shifted to the government at the Court-ordered bond hearing, and that DHS's unilateral imposition of ankle monitoring

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must keep intact equitable remedies it has already ordered, see Order Granting Writ in Part at 5, 10 (permanently enjoining Federal Respondents, including the BIA and IJs, from justifying Petitioner's detention under § 1225(b)(2)(A)), to ensure that Federal Respondents abide by due process moving forward, in the event they seek Petitioner's re-detention under § 1226(a). Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court also finds it appropriate to require that, in the event DHS seeks Petitioner's re-detention under § 1226(a), Federal Respondents must provide him with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's conditional writ ordering a bond hearing "under the Due Process Clause" wherein the government was required "to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing" to continue the petitioner's detention) (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of law and Petitioner's rights to date.

Finally, considering the foregoing analysis and decision that immediate release is the appropriate remedy, the Court does not reach and thus denies without prejudice Petitioner's arguments challenging his December 15 bond hearing, and it dismisses without prejudice his First Amended Petition for Writ of Habeas Corpus (ECF No. 35), which the Court stayed pending its resolution of the Motion.

---

defied agency regulations and the Court's order); Salazar-Lopez v. Mullin, No. 2:26-CV-00871-RFB-MDC, 2026 WL 1414066 (D. Nev. May 20, 2026) (finding the IJ failed to address the requirement that the evidentiary burden be borne by the government at the Court-ordered bond hearing); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with this Court's conditional writ, which required the government to bear the evidentiary burden at Petitioner's bond hearing).

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's Motion to Reconsider Order Granting Habeas Petition in Part (ECF No. 37) is **GRANTED in part**. The parts of the May 13, 2026, Order Granting Petition for Writ of Habeas Corpus in Part finding that Petitioner is not a Jacobo-Ramirez Class Member (ECF No. 32 at n.2) and denying him immediate release on Grounds 1B and 1C in the Amended Petition (id. at 5–8 (§§ IB & IC)) are **VACATED**. This means all other parts of the May 13, 2026, Order remain in full force and effect (*i.e.*, the order permanently enjoining Federal Respondents "from denying [Petitioner[8]] the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)[,]" (id. at 4–5 (§ IA), 10 (§ II), and the order that Federal Respondents are "prohibited from removing [Petitioner] to any other third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of providing him a reasonable opportunity to reopen immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge" (id. at 9–10 (§ ID, § II). The Motion is denied without prejudice in all other respects.

**IT IS FURTHER ORDERED** that the original First Amended Petition for Writ of Habeas Corpus (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that the second First Amended Petition for Writ of Habeas Corpus (ECF No. 35) is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order (ECF No. 44) is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention **ON HIS PERSONAL RECOGNIZANCE on November 3, 2026**, between the hours of **12:00 and 3:00 p.m.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic

---

[8] Petitioner's name was erroneously listed as "Rodriguez" in the conclusion. Order Granting Writ in Part at 10.

monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **November 4, 2026**, confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

///

///

///

///

///

///

///

///

///

The Clerk of Court is kindly instructed to substitute Todd Blanche for Respondent Pamela Bondi, David J. Venturella for Respondent Todd Lyons, and Markwayne Mullin for Respondent Kristi Noem under Federal Rule of Civil Procedure 25(d); and enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** November 2, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**